### 26920. PIPPIN *v.* J. REGENSTEIN COMPANY.

820

DECIDED OCTOBER 31, 1938. REHEARING DENIED NOVEMBER 25, 1938.

*Barrett & Nall,* for plaintiff.   *T. J. Long,* for defendant.

SUTTON, J.   Mrs. Eloise Pippin brought suit against J. Regenstein Company for damages on account of personal injuries sustained while an invitee in the department store operated by the defendant, it being alleged that a mirror in one of the display-rooms of the defendant fell and struck the plaintiff on the leg with resultant described injuries.   The petition charged that the defendant was negligent in permitting the mirror, about four feet wide and about ten feet long, set in a heavy frame and weighing from 150 to 200 pounds, to remain on the floor of the display-room without being fastened securely, when the defendant knew that its various customers used that floor at all times during the hours the store was open, and knew that the mirror was dangerous when allowed to remain in that condition without being securely fastened to the floor.   The defendant filed an answer denying the substantial allegations of the petition.

On the trial of the case the evidence was substantially as follows: The plaintiff, accompanied by her sister and the latter's seven-year-old daughter, visited the store of the defendant as an invitee.   On the second floor of the establishment the defendant maintained, in its ladies' dress department, a triple mirror weighing approximately 150 pounds, the mirror being mounted on rollers so that it could be moved about to suit the convenience of the defendant and its patrons.   The mirror was described by a director and financial manager of the defendant as follows:   "That mirror that is depicted in that photograph is what we call a triple mirror, hinged in the middle, and another hinge at the corner, with about a fifteen-inch side that comes forward so as to make a base like that when you separate it.   That mirror was built especially for a department

store, for the purpose of displaying merchandise, so ladies could see while they were trying on dresses. That mirror in our store on May 2, 1936 [the date of the injury], which was broken that day, is that kind of mirror that I have described. That mirror which is depicted in that picture and the one that was turned over were mirrors that were bought at the same time; there was no difference; they were duplicate mirrors. They are types of mirrors that are particularly adapted for general use in department stores, or similar places in the country, by supply houses supplying department store fixtures. They are never fastened. They are intended to sit up and be moved around for the customers' use and they do stand up. They have rollers at the four corners that I have just described. . . Those mirrors were bought and installed the 25th of February, 1930. Yes, these mirrors are in general use. I have seen the general type. These mirrors were especially made up, but they were not identical. This mirror was sitting near the wall when it fell. . . This mirror has never been fastened; it has never been fastened in any place; it was not necessary. . . It was standing up there with rollers on it like a bureau or bed sits. It would weigh possibly 150 pounds." The witness testified on cross-examination that the mirror was first installed in another store of the defendant on February 25, 1930, and that about September 1, 1935, it was placed in the store where the injury occurred on May 2, 1936. The plaintiff testified that while she was standing about five or ten feet from the mirror, looking at some dresses, the mirror fell and struck her, that she was facing away from the mirror and did not see it falling or know that it was falling.

Mrs. R. M. Wall, saleswoman for the defendant, testified that she was nearby the mirror, serving a customer, and that the small daughter of the plaintiff's sister was swinging on the mirror, that the witness cautioned her against it, that the child was going all the way around, catching hold on one side, that the maid at the store warned the child she might get hurt, but that the child continued to swing on the mirror until she pulled it over, that she held on to it with one hand and pulled it in such a way that she was prevented from being hurt. Two other saleswomen for the defendant testified substantially as did Mrs. Wall as to the child swinging on the mirror and finally causing it to fall, and as to a maid at the store remonstrating with the child. One testified that when the

maid cautioned the child the second time the child made a face at her and that in about a second the mirror fell.

The evidence was conflicting as to whether or not, at about the time the mirror fell, the plaintiff and her sister were looking in the direction of the mirror and could have seen the child or were looking in another direction at some dresses. There was no evidence that the plaintiff or the mother of the child had been notified as to the child's conduct. The plaintiff and her sister, the mother of the child, testified that the child was not warned against swinging on the mirror, and that they were near enough to have heard anything said to the child if it had been said. The jury returned a verdict in favor of the defendant. The plaintiff filed a motion for new trial on the general grounds, and by amendment added two special grounds complaining of certain portions of the charge of the court. The court overruled the motion for new trial, and the exception here is to that judgment.

■ Under the evidence in the present case the jury was authorized to find that the defendant was not negligent in maintaining in its display-room the described mirror as placed and for the purpose it was to serve; that the child of the plaintiff's sister, a child about seven years of age, persisted in swinging on the mirror, against the remonstrances of the defendant's employees, until its conduct caused it to fall; and that the proximate cause of the plaintiff's injuries was the said act of the child. It is well settled that where the sole proximate cause of an injury to the plaintiff is the negligence of a third person there can be no recovery against the defendant although he may have been guilty of negligence himself. An excellent statement of proximate cause is to be found in *Southern Railway Co.* v. *Webb*, 116 *Ga.* 152 (42 S. E. 395, 59 L. R. A. 109) : "While the general rule is that if, subsequently to an original wrongful or negligent act, a new cause has intervened, of itself sufficient to stand as the cause of the misfortune, the former must be considered as too remote, still if the character of the intervening act claimed to break the connection between the original wrongful act and the subsequent injury was such that its probable or natural consequences could reasonably have been anticipated, apprehended, or foreseen by the original wrongdoer, the casual connection is not broken, and the original wrongdoer is responsible for all of the consequences resulting from the intervening act." See

also *Hardwick* v. *Figgers*, 26 *Ga. App.* 494 (106 S. E. 738). The jury was authorized to find from the evidence that the intervening act of the child in swinging on the mirror broke the connection between the defendant's act, if wrongful, and the subsequent injury, and that such act of the child was the sole proximate cause of the injury. See in this connection *Horton* v. *Sanchez*, 57 *Ga. App.* 612 (195 S. E. 873).

Nor could it be said that the defendant was under a duty to anticipate that a child seven or eight years of age might use the mirror as it did. It was held in *Savannah Fla. &c. Railway Co.* v. *Beavers*, 113 *Ga.* 398 (39 S. E. 82, 54 L. R. A. 314), that, as to a child, the doctrine of the "turn-table" cases will not be extended, and this ruling was approved in *O'Connor* v. *Brucker*, 117 *Ga.* 451, 453 (43 S. E. 731). See also *McCall* v. *McCallie*, 48 *Ga. App.* 99 (171 S. E. 843); *Crawford* v. *Pollard*, 55 *Ga. App.* 702 (191 S. E. 162).

It is properly contended by the plaintiff in error that the defendant owed the plaintiff the duty of protecting her after it became apparent that while an invitee she might be injured by the misconduct of another upon the premises, and we are cited to *Great Atlantic & Pacific Tea Co.* v. *Cox*, 51 *Ga. App.* 880 (181 S. E. 788) where it was held: "1. It is the duty of one who invites members of the general public to come to his place of business to protect such customers or invitees from injury caused by misconduct of his own employees in the conduct and scope of his business, and from the misconduct of other persons who come upon the premises. 2. If the conduct of such employees outside the scope of their employment, or of third persons or customers, is such as to cause any reasonable apprehension of danger to other customers or invitees because of such conduct, it is the duty of the proprietor to interfere to prevent probable injury; and a failure so to interfere, and consequent damage, will subject such proprietor to an action for damages for such negligent failure to prevent the injury." See also *Moone* v. *Smith*, 6 *Ga. App.* 649 (65 S. E. 712), also cited by the plaintiff in error. The evidence shows that employees of the defendant remonstrated with the child and endeavored to prevent its swinging on the mirror until the time it actually fell and injured the plaintiff. Whether or not the efforts of the employees, on behalf of the defendant, constituted ordinary care as

to protecting the plaintiff from injury was a jury question, and by the verdict of the jury that question has been resolved in favor of the defendant. Under the law and the evidence the jury was authorized to return a verdict in favor of the defendant. All of the cases cited by the plaintiff in error have been carefully considered on the merits of the case, but none requires a ruling different from that we have made.

■ The two special grounds of the motion for new trial complain that certain portions of the charge of the court were confusing and misleading to the jury, and failed to state a correct principle of law in that the court failed to inform the jury that it was the duty of the defendant to anticipate that a child might, by its misconduct on the premises, cause the mirror, in its condition and as it was used, to fall and injure a customer. These contentions are disposed of adversely to the plaintiff by what is said in the first division of the opinion in this respect.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur.*