27382. HEALEY *et al. v.* WEBB.

DECIDED JULY 12, 1939.

*George & John L. Westmoreland,* for plaintiffs in error.

*John W. Bolton, Ben T. Blackmon, J. Wilson Parker,* contra.

BROYLES, C. J. Guy Webb, an eleven-year-old boy, by his next friend and father (E. L. Webb), sued William T. Healey and Oliver M. Healey for damages for alleged personal injuries. The amended petition alleged that the defendants were residents of Fulton County, and owned and operated a farm, consisting of two settlements, in Cobb County; that E. L. Webb was employed by the defendants to stay on the farm and run it for them, and that the contract of employment took into consideration the services to be rendered by Guy Webb in helping to work the farm; that E. L. Webb and his family, including Guy Webb, occupied the dwelling house on one settlement, and that E. L. Webb's married son, with his family, occupied the dwelling house on the other settlement; that defendants reserved to themselves the right of possession of the premises, and the plaintiff was an invitee thereon because he was a member of his father's family and resided and worked on the farm under the terms of the contract between his father and the defendants; that on the premises was an old open barn which was used as a storage place for guano, hay, and farm tools; that the barn was about 35 yards from the dwelling house occupied by the married brother of the plaintiff; that for two or three years before October 10, 1937, the defendants had intermittently stored in the barn two mechanical devices known as clay-pigeon traps, which were used by them for target practice with shotguns, the traps being machines in the nature of a catapult, having thereon a long arm or lever, in the end of which can be fastened a small disk, commonly known as a clay pigeon, said arm or lever being held set by a trigger to which a rope is attached and, when the trap is set or cocked, a powerful spring is attached to the lever in such a manner that when the trigger is pulled the spring is released and the lever is thrown violently in a manner that will cause the clay

pigeon to be projected about 250 yards away; that about a month before the plaintiff was injured, as hereinafter described, the defendants had again placed and stored said traps in said barn, the traps being placed on the floor of the barn; that on October 10, 1937, about 4 o'clock p. m., the plaintiff, his seven-year-old nephew, Ed Webb, and a twelve-year-old neighbor's child, Clyde Stroup, were playing in the barn; that the traps when placed in the barn by the defendants were not left set or cocked, but one of the traps was set or cocked by Ed Webb and Clyde Stroup during their play on the occasion in question, "they being attracted to said traps by reason of their unusual construction, different from the usual type of implement found on a farm, and said traps being able to be cocked or set with very little effort, and while petitioner was in front of the particular trap that had been so placed and stored by the defendants and which had been set or cocked by the said Ed Webb and Clyde Stroup, and while Ed Webb was behind said trap, petitioner stooped over to pick up an apple that he had dropped and was suddenly and violently hit in the head by the arm or lever of said trap, the rope attached to the trigger of said machine having been pulled in play by Ed Webb," thereby inflicting the injuries sued for; that the barn was used by petitioner's father under the terms of his contract with the defendants as a storage place for guano, hay, and farm tools, and by reason of its close proximity and easy accessibility to the dwelling house occupied by Clarence Webb (the brother of plaintiff), who had minor children as members of his family, the defendants should have anticipated the presence of petitioner and other children in the barn, the same being within the curtilage of the dwelling occupied by Clarence Webb; that said traps were "in the nature of a pitfall or mantrap." The petition as amended was demurred to, generally and specially. Several of the special demurrers were sustained, but the general demurrer was overruled; and to the judgment on the general demurrer the defendant excepted.

The alleged cause of action is evidently based on the doctrine of the "turn-table cases." The plaintiff's father, as shown by the amended petition, was a tenant of the defendants, and the duty owed by the defendants to the plaintiff and other invitees upon the premises was to exercise ordinary care to keep the premises in a reasonably safe condition. The petition, properly construed (most

strongly against the plaintiff), shows the following facts: The clay-pigeon traps had been left in the barn, off and on, for several years, and nobody had been injured by them until the accident to the plaintiff. As stated, the traps were unloaded and uncocked, and in that condition were harmless. There were no disks (clay pigeons) left in the bar. The traps were used for the sole purpose of projecting clay pigeons to be shot at, with shotguns, outside of the barn. No objections to the storing of the traps in the barn had been made by the plaintiff's father, or by any one else, to the defendants; nor were the defendants notified that children were in the habit of playing in the barn which was used by the tenant for the storing of guano and farm tools. Under such circumstances, could the defendants, in the exercise of ordinary care, have reasonably anticipated that the machines, as left by them, unloaded and uncocked, would or could inflict injuries on anybody? We think not. Suppose that the defendants had left in the barn an unloaded shotgun, and that children playing in the barn had picked up, cocked the gun, and pulled the trigger and thereby mashed the finger of a child, could the defendants have reasonably anticipated such an injury? Obviously not. Suppose, again, that the defendants had stored in the barn a pitchfork, and that one child had accidently stuck another with it, would the defendants be liable in damages for such injury? The Supreme Court and this court have repeatedly ruled that the principle of the "turntable cases" will not be extended. *O'Connor* v. *Brucker,* 117 *Ga.* 451 (4) (43 S. E. 731); *Pippin* v. *J. Regenstein Co.,* 58 *Ga. App.* 819 (1-*b*) (199 S. E. 790). Furthermore, the petition clearly shows that the storing of the unloaded clay-pigeon traps in the barn was not the proximate cause of the plaintiff's injuries, but that the injuries were directly caused by the independent and intervening act of third persons (the plaintiff's playmates). In *O'Connor* v. *Brucker,* supra, the court said: "But here, making all possible intendments in favor of the verdict, and considering that all amendable defects in the petition had been cured, it is yet evident that under the facts the defendant was not liable. It has been recently held by this court that the doctrine of the 'turntable cases' will not be extended. *S., F. & W. R. Co.* v. *Beavers,* 113 *Ga.* 398 (39 S. E. 82, 54 L. R. A. 314). In view of this decision it is doubtful whether the owner [of premises] would be

liable where a child had been injured after entering the door of a vacant house. But even if leaving the door open was an act of negligence, and an enticement to children, the owner would only be liable for the damages *which naturally flowed from such act;* as, for example, for injuries caused by a child falling through a hole in the floor, or from defects in the building. But where there was no defect in the building, where the windows were down, and where a companion attempted to lift the window-sash, and in so doing the window fell and injured the hand of the infant, the owner of the building is not responsible. If the gate to the yard had been left open and children had entered, and while at play one had accidentally dropped a brick or heavy object on a playmate, the landowner would not be responsible. The principle is not different where the injury occurred within the building. It was not negligence to let the window-sash remain unfastened; the fall of the window was not the proximate result of leaving open the door. The injury was caused by the independent and intervening act of the infant's playmate." (Italics ours).

In our opinion, the decision just quoted is controlling in principle in the instant case. In *Horton* v. *Sanchez,* 57 *Ga. App.* 612 (195 S. E. 873), where this court affirmed the judgment dismissing the petition on a general demurrer, the court, on page 620, said: "It is earnestly contended by the plaintiff in error that the question of proximate cause should have been referred to a jury. Generally that question, like the question of negligence, is one for a jury; but where the allegations of the petition, as here, clearly show that the proximate cause of the injury to the plaintiff was the negligent act of a third person, rather than the act of the defendant, whether negligent or not, the question must be decided by the court as a matter of law. A proper construction of the petition in the present case requires a holding that the proximate cause of the plaintiff's injury was the negligent, intervening act of the third party, Califf, and not that of the defendant, Dr. Sanchez." That ruling is applicable to the instant case, the petition here clearly showing that the proximate cause of the plaintiff's injuries was the independent and intervening act of third parties, the plaintiff's playmates. We have carefully considered all of the cases cited by the defendant in error, but in our opinion they are distinguished by their particular facts from this case. For instance, there is an

obvious and fundamental difference between the act of storing an *unloaded* clay-pigeon trap (a machine not inherently dangerous) in a barn where children might be expected to play, and the act of placing therein or elsewhere *dynamite* caps or sticks (articles known by all men to be inherently and extremely dangerous to life and limb). The petition as amended failed to set out a cause of action, and the court erred in overruling the general demurrer interposed. *Judgment reversed. MacIntyre and Guerry, JJ., concur.*