42519. NESMITH v. STARR, by Next Friend, et al.
42520. NESMITH v. STARR et al.

ARGUED JANUARY 4, 1967—DECIDED MARCH 8, 1967— REHEARING DENIED MARCH 28, 1967—

 473

*Greene, Buckley, DeRieux, Moore & Jones, Harry L. Greene, James A. Eichelberger,* for appellant.

*Swift, Currie, McGhee & Hiers, Robert S. Harkey, Long, Weinberg & Ansley,* for appellees.

FELTON, Chief Judge. A landlord, such as an apartment-house owner, who retains qualified possession and general supervision of portions of the demised premises of which common use is made by the tenants, is liable in damages to tenants and other invitees for injuries occasioned by his failure to exercise ordinary care in keeping the premises and approaches safe. *Code* § 105-401; *Rothberg v. Bradley,* 85 Ga. App. 477 (1) (69

SE2d 293); *Maloof v. Blackmon,* 105 Ga. App. 207, 208 (4a) (124 SE2d 441); *670 New Street, Inc. v. Smith,* 107 Ga. App. 539, 542 (130 SE2d 773); *Fincher v. Fox,* 107 Ga. App. 695, 697 (1) (131 SE2d 651). This same duty extended to the minor plaintiff, as the son of the plaintiff tenant. *Crossgrove v. Atlantic C. L. R. Co.,* 30 Ga. App. 462 (2) (118 SE 694); *Golf Club Co. v. Rothstein,* 97 Ga. App. 128, 130 (102 SE2d 654). The questions of whether the landlord exercised ordinary care in keeping the premises safe, the proximate cause of the injury and contributory negligence are for the determination of the jury unless the allegations of negligence in the petition are negatived by other allegations. *Goldsmith v. Hazelwood,* 93 Ga. App. 466, 468 (92 SE2d 48), and cit.; *Shannon v. Bigelow-Sanford &c. Co., Inc.,* 96 Ga. App. 458, 460 (100 SE2d 478), and cit.

In determining the defendants' liability, if any, the jury can consider the fact that a greater duty was owed to the minor plaintiff because of his tender years than to older persons. *Etheredge v. Central of Ga. R. Co.,* 122 Ga. 853 (50 SE 1003); *Augusta Amusements, Inc. v. Powell,* 93 Ga. App. 752, 754 (92 SE2d 720). Cases denying liability where the injury is caused by a statical condition or instrumentality, not inherently dangerous (see, e.g., *Brown v. Bone,* 85 Ga. App. 22 (68 SE2d 190); *Southern Bell Tel. & Tel. Co. v. Brackin,* 215 Ga. 225, 228 (3), (109 SE2d 782), and cit.) are distinguishable in that their pleadings or evidence, or both, *as interpreted by the appellate courts,* have shown the injured parties to be trespassers, to whom the owner does not owe the higher standard of care owed to licensees and invitees, such as is here involved in the landlord-tenant relationship. In the *Brackin* case, 99 Ga. App. 77 (107 SE2d 864), the petition alleged that the plaintiff found the instrumentality of his injury *on his own yard,* which would have made him an invitee. This court stated that "[t]he petition sought recovery of damages on the theory that the wire left on the premises was an *attractive nuisance"* (emphasis supplied), that, since the original demurrers to the petition were not renewed following its material amendment the plaintiff was entitled to a verdict as against a motion for a directed verdict if the evidence

would authorize the jury to find that the case was proved *as laid*, which this court found was the case. *Southern Bell Tel. & Tel. Co. v. Brackin*, 99 Ga. App. 77, supra. In reversing, the Supreme Court stated (215 Ga. 225 (3), supra) that "[w]e think that the Court of Appeals properly construed the plaintiff's petition as being based upon the 'attractive nuisance doctrine,'" perhaps basing this assumption upon this court's statement, above quoted, to the effect that the theory was that the wire was an "attractive nuisance." This court did not mention the attractive nuisance doctrine in its opinion and, as the author of the opinion, I can state that it was not considered applicable in that case. The Supreme Court, however, cited evidence which it construed as showing that the plaintiff found the wire elsewhere than his yard, making him a *trespasser* under its construction of the evidence.

In *Starland Dairies, Inc. v. Evans*, 105 Ga. App. 813 (125 SE2d 682), this court upheld the finding that an action was not based upon the attractive nuisance doctrine, one stated reason for which being the absence of any allegation that the plaintiff was a trespasser and the fact that the petition showed her to be a licensee. In discussing this doctrine, the court said, on pp. 814 and 815, in part as follows: "The function of the so-called turntable doctrine is to remove an infant trespasser from the law applicable to trespassers generally, which is that the owner of land has no duty to keep his premises safe as to them, by indulging in the legal fiction that the attractiveness of the instrumentality to the child constitutes an implied invitation to him to come on the premises and thereby raises the owner's duty to the exercise of ordinary care to avoid injuring him [cit.]. . . In the taxonomy of negligence law, the attractive nuisance doctrine is but another way of saying that under given circumstances the defendant is liable for the consequences of his negligence where he should in the exercise of ordinary care have foreseen that harm would result to an infant trespasser whose presence he should have anticipated. *The same result may be arrived at without invoking the doctrine where the infant is not a trespasser and the duty to exercise due care under the circumstances has not been met.*" (Emphasis supplied.)

In our opinion this court would be doing a dangerous and unfounded thing in giving the impression, in cases not involving an implied invitation, that courts restrict the definition of ordinary care in ruling that the attractive nuisance doctrine will not be extended. In the latter ruling the motive and purpose of the courts is to refuse to extend the attractive nuisance doctrine for the sole purpose of *limiting the fiction of implied invitation to children, not to change the rule as to ordinary care*. In cases where no implied invitation is involved, the question of the attractiveness to children of an object is relevant, not on the question of the relationship of the parties but simply whether under the facts alleged and proved the defendants should have anticipated that harm would come to children because of the knowledge on the part of defendants of the character of the object involved and the fact of the knowledge of the likelihood of the presence of children. The question in this case is simply whether the defendants were negligent. It is *not* whether the attractive nuisance doctrine should be extended. If these two things are confused we could come up with a ruling against extending the application of the attractive nuisance doctrine which would preclude a finding of negligence against a defendant when if the question of extending the said doctrine had been properly left out of the case a finding of negligence against a defendant should have been approved. The terms "attractive nuisance" and "attractive nuisance doctrine" are not synonymous. The first is applicable in defining negligence, where there is a duty of ordinary care. The second is relevant when an implied invitation is needed to form a basis for a duty on the part of a defendant to exercise ordinary care. The *doctrine* of attractive nuisance has no place in a case where the circumstances show a duty on the part of a defendant to exercise ordinary care without resort to the doctrine of attractive nuisances. The *Brackin* case supra, properly construed, simply holds that there is no implied invitation. It does not rule that a duty to exercise ordinary care was not breached.

Nor does it matter whether the injury occurred as a result of the minor plaintiff's act or that of his playmates, since a jury might find that such an intervening act was not unforeseen

to the defendants. *Cooper v. Anderson*, 96 Ga. App. 800 (1) (101 SE2d 770).

While the defendant landlord and its agents would not be liable for the plaintiff's injuries if the dangerous condition existed at the time of the lease of which the plaintiff tenant knew or had means of knowing, equal to those of the landlord (*Golf Club Co. v. Rothstein*, 97 Ga. App. 128, 130, supra, and cit.), the failure of the petitions to allege when the lease began does not raise such a presumption under the facts of this case, even construing the petitions most strongly against the pleader and in the light of their omissions (*Henderson v. Baird*, 100 Ga. App. 627, 632 (3), 112 SE2d 221, and cit.). That the dangers of the premises were as well known to the plaintiffs as to the defendants is a matter of defense under the facts of this case.

The petitions stated good causes of action as against the general demurrers, which were, therefore, properly overruled.

*Judgments affirmed. Bell, P. J., Jordan, Hall and Quillian, JJ., concur. Hall, J., also concurs specially. Frankum, P. J., Eberhardt, Pannell and Deen, JJ., dissent.*

HALL, Judge, concurring specially. While I concur in the majority opinion, I will with brevity attempt to set out my personal view of the case with the thought it may serve as a basis for predictability of my position in future cases.

No member of this court dissents to the view that the infant plaintiff was an invitee. Since he was an invitee, the defendant owed him a duty to exercise ordinary care in keeping the premises safe. This suit is in negligence, i.e., "failure to exercise ordinary care." The defendant has breached that duty if he has exposed the infant plaintiff to a foreseeable *unreasonable* risk of harm.

I would agree that some objects are so "commonplace" that they are part of the hazard of any child growing up and that this court can hold as a matter of law that the leaving of these objects on the premises does not expose a child to an unreasonable risk of harm, e.g., piece of wire or rope, pencil, hammer, handsaw, screwdriver, wrench or perhaps even an unloaded clay-pigeon trap. I would also agree that some objects are so "inherently dangerous" that the leaving of these objects on the

premises would as a matter of law expose a child to an unreasonable risk of harm, e.g., explosives, loaded gun, poison, and a live and exposed electric wire. However, there are other articles as to which reasonable men could differ on the question whether their presence would expose a child to an unreasonable risk of harm. In my opinion, a "brick-cutting device" fits this category.

There is no Georgia decision involving a "brick-cutting device." No such decision has been cited from any other jurisdiction. It is clearly a case of first impression. This court has neither the clairvoyance nor the expertise to categorize this device as a matter of law to be "commonplace" or "inherently dangerous." The question must be resolved by a jury.

EBERHARDT, Judge, dissenting. The allegations of this petition are that the manually operated brick-cutting machine with which the child injured himself "was attractive to and did in fact attract the petitioner and other children." This I take as a reliance on the attractive nuisance doctrine, for the allegation is substantially the same as that found in *Southern Bell Tel. & Tel. Co. v. Brackin*, 215 Ga. 225 (109 SE2d 782), reversing *Southern Bell Tel. & Tel. Co. v. Brackin*, 99 Ga. App. 77 (107 SE2d 864), where the Supreme Court asserted: "We think that the Court of Appeals properly construed the plaintiff's petition as being based upon 'the attractive nuisance doctrine.'" It is further to be noted that in *Brackin,* as here, the child was not a trespasser. Many cases have indicated that this doctrine is applied for the purpose of supplying an implied invitation to a trespassing child. See, e.g., *Savannah, Fla. &c. R. Co. v. Beavers*, 113 Ga. 398 (39 SE 82, 54 LRA 314); *Southern Cotton Oil Co. v. Pierce*, 145 Ga. 130, 132 (88 SE 672). But it seems to have been applied in instances where no trespass was involved. Cf. *Starland Dairies, Inc. v. Evans*, 105 Ga. App. 813 (125 SE2d 682).

As Justice Hawkins pointed out in *Brackin,* 215 Ga. 225, 228, application of the doctrine is limited—whether there be a trespass or not—and it is to be given effect "only where the instrument involved is within itself inherently dangerous, as well as attractive, to the finder, such as weapons, explosives, turntables, or objects of that type, which are not commonplace, and are

within themselves inherently dangerous. It would be extending the doctrine entirely too far to apply it to such commonplace objects as a piece of wire, a pencil, a writing pen, a knife, coat hanger, piece of rope, broken bottle, a plumber's wrench, a carpenter's hammer, saw or screwdriver, a bicycle, or velocipede, all objects so commonplace as to be found around anyone's house or yard or where any construction work is being performed, but not dangerous in themselves, although they might be attractive to children, and capable of inflicting injury if improperly or carelessly used."

A manually operated brick-cutting device is to be found where construction work goes on. It is not inherently dangerous, though it is capable of inflicting injury when improperly or carelessly used. But it does not have the inherent danger of a loaded gun, a poison, a stick of dynamite, a live and exposed electric wire, or things of that type. It does not have the inherent danger that may be lurking in cog wheels of a gear box, shaft and pulley, or other moving things. Unless being used by the workman it is static, like the carpenter's saw, hammer or an axe. It will produce no injury unless somebody does something to make it do so. No injury can come from merely touching it, as might happen in the case of a live wire, or a loaded gun, or a poison. Injury may come from the improper handling of it, just as it would from the improper handling of a saw, hammer or an axe.

It is perfectly obvious that if one lifts the blade of the device, places his finger under it and allows the blade to fall, injury will occur. The attractive nuisance doctrine does not extend to a danger which is obvious and natural, considering the instrumentality from which it arises. *Savannah, Fla. &c. R. Co. v. Beavers,* 113 Ga. 398, supra. It carries no hidden peril, as does the loaded gun, the live wire, the poison, or a turntable. Nor is the fact that it may have held some attraction to this child enough to bring it within the ambit of the doctrine. Cf. *Atlantic C. L. R. Co. v. O'Neal,* 180 Ga. 153 (178 SE 451) where logs, "negligently and dangerously piled adjacent to a public street" were held not to impose liability for the death of a child who, playing on them, was killed when one rolled over him.

"If everything containing some element of danger to a boy, of which a plaything possibly can be made by him, amounts to an attractive nuisance, there is almost no limit to the application of the doctrine." 38 AmJur 815, Negligence, § 149. The cases from both the Supreme Court and this court asserting that the doctrine is not to be extended beyond what is declared in the turntable cases are legion. It was so held in the *Beavers* case and the *Pierce* case, supra. It has been reasserted in *O'Connor v. Brucker*, 117 Ga. 451, 453 (43 SE 731) and scores of others.

The majority and the concurring opinion, by necessary implication, rest on the rule of Restatement (2 Restatement, Torts, § 339). This rule is an *extension* or *enlargement* of the attractive nuisance or turntable doctrine. "Harper, James and Prosser are all of the view, apparently, that the basis of liability under section 339 of the restatement *is not alone* the attractive nuisance doctrine, but 'the more flexible test of negligence which would balance these competing interests (the landowner's and the child's) on a case to case basis' and the four [now five; see 2 Restatement 2d, Torts § 339] elements set forth in the restatement. 2 Harper & James, Torts, § 27.5, pp. 1450-1460; Prosser, Torts, § 76, p. 440. . . Whatever section 339 of the restatement may mean, in 1939 in Hull v. Gillioz, 344 Mo. 1227, 1234-1235, (130 SW2d 623, 627), in State ex rel. W. E. Callahan Const. Co. v. Hughes, 348 Mo. 1209 (159 SW2d 251), and in 1956 in Patterson v. Gibson (Mo.) 287 SW2d 853, 854-856, it was said that section 339 was a restatement of the attractive nuisance doctrine but that 'this court has been unwilling to extend the doctrine as far as the rules adopted by the Restatement would extend it.' " Cox v. Gros, (Mo.) 360 SW2d 691. Elements of extension are also pointed out in 65 CJS 835, Negligence, § 63 (89) et seq.

Since section 339 of Restatement is an extension of the doctrine, and since both this court and the Supreme Court are committed to a policy of not extending it, adoption of the Restatement rule could be done only by the Supreme Court. If it is a better rule, as some courts have concluded, and should be adopted in Georgia, the Supreme Court must do it. Our doing

so would amount to an overruling of that court, which we have no authority to do.

The reason for refusal by our courts to extend the doctrine is doubtless, as asserted in Camp v. Peel, 33 Cal. App. 2d 612 (92 P2d 428), that the doctrine is frequently exposed to the likelihood of extension through the influence of sympathy; hence the limitation on it.

It is pointed out, too, in State ex rel. W. E. Callahan Const. Co. v. Hughes, 348 Mo. 1209, supra, that the effect of extending the doctrine to accommodate the rule of Restatement would be to make it a "jury question in every case as to whether or not a particular instrumentality was inherently dangerous and attractive to children. *This is in conflict with a general principle of law enunciated in controlling decisions, that the attractive nuisance doctrine will not be extended beyond the principle of the turntable cases.*"

I do not rely upon the case of *Brown v. Bone,* 85 Ga. App. 22 (68 SE2d 190) where it was held that as to a trespassing child a soil pan on a bulldozer suspended in a precarious state of balance with a mechanism like unto that of a gun trigger to release it did not come within the ambit of the doctrine. That case may be in conflict with *American Tel. & Tel. Co. v. Murden,* 141 Ga. 208 (80 SE 788) (though no trespass was involved there) where it was held that a chest left open with a heavy lid standing in an almost perpendicular position, held in place by a small chain, and which could by very slight pressure on the chain be drawn over and fall shut did come within the doctrine. If this petition had alleged that the brick-cutting device had been left with its blade suspended, to be released and fall with the application of slight pressure on its handle, or by touching a trigger mechanism, and that in this manner the child had suffered injury, I should have no hesitancy in holding it to be an attractive device within the doctrine.

This petition falls short in its allegations in that respect. Not only does it carefully omit to allege that the device is not one "to be found around . . . where any construction work is being performed," but it also wholly fails to allege that it was left by the workmen with the blade suspended so as to make it

an inherently dangerous article. It 'is not alleged that the device was inherently dangerous, and if it were, no facts are alleged showing it to be so; rather, the facts alleged show it not to be. It is a well settled rule that pleadings must be construed in the light of their omissions as well as their averments. *Houston v. Pollard,* 217 Ga. 184 (121 SE2d 629).

The allegations that the area in which the accident occurred was one where children were wont to play does not supply the deficiency, for children play nearly everywhere—more in some places, of course, than in others. The crux of the matter is that the brick-cutting device is of the category excluded from the application of the doctrine. There is considerable similarity of the facts here with those in *O'Connor v. Brucker,* 117 Ga. 451, supra, where children were playing in a vacant house and one of them suffered an injury to his hand when a playmate, attempting to lift the window sash, let go and dropped it on the plaintiff's hand. It was held that the doctrine did not apply. The window sash, like the cutting blade of the device here, was confined in its operation to one plane. Since a hammer, saw or an axe is not, it would seem that these may involve more actual danger, and I think it so unless it appears that the blade was left precariously suspended.

The ruling of the majority is in conflict, too, with the case of *Healey v. Webb,* 60 Ga. App. 331 (3 SE2d 868) where it was held that mechanical devices known as clay pigeon traps, which are spring operated catapults for throwing clay pigeons into the air for target practice, when left unloaded and uncocked are not inherently dangerous and do not come within the ambit of the doctrine. Plaintiff, a seven-year-old boy, playing with others in the barn where the traps were stored, was injured when one of them cocked a trap and let it go, striking plaintiff. In that case it was asked, "[C]ould the defendants, in the exercise of ordinary care have reasonably anticipated that the machines, as left by them, unloaded and uncocked, would or could inflict injuries on anybody? We think not. Suppose the defendants had left in the barn an unloaded shotgun, and that children playing in the barn had picked up, cocked the gun, and pulled the trigger and thereby

mashed the finger of a child, could the defendants have reasonably anticipated such an injury? Obviously not. Suppose, again, that the defendants had stored in the barn a pitchfork, and that one child had accidentally stuck another with it, would the defendants be liable in damages for such injury? The Supreme Court and this court have repeatedly ruled that the principle of the 'turntable cases' will not be extended." Incidentally, it is to be observed that the plaintiff in the *Healey* case alleged himself to have been an invitee. No trespass, therefore, was involved. The court concluded its opinion with the observation that "there is an obvious and fundamental difference between the act of storing an *unloaded* clay pigeon trap (a machine not inherently dangerous) in a barn where children might be expected to play, and the act of placing therein or elsewhere dynamite caps or sticks (articles known by all men to be inherently and extremely dangerous to life and limb). The petition as amended failed to set out a cause of action, and the court erred in overruling the general demurrer interposed."

There is an obvious and fundamental difference in leaving the brick-cutting device with the blade down, as must be assumed to have been the case here, and leaving it suspended—to be released by some trigger or movement of the handle.

Following *Brackin* and *Healey* I must conclude that there was error in overruling the general demurrer.

I am authorized to state that Presiding Judge Frankum and Judges Pannell and Deen concur in this dissent.