## 29253. JORDAN v. WIGGINS.

DECIDED ·JANUARY 14, 1942.

R. *Carter Pittman, L. W. Honeycutt,* for plaintiff in error.

D. *W. Mitchell, W. M. Henderson,* contra.

SUTTON, J. Mrs. Arthur Wiggins brought suit against Lee Jordan and L. E. Roth to recover damages for the alleged negligent homicide of her minor daughter, the petition alleging as follows: Lee Jordan was employed by the Whitfield County Board of Education as a school-bus driver for the Pleasant Grove Consolidated School and was acting in such capacity on September 18, 1940. Under such contract of employment it was his duty to transport school children from their respective homes to the said school and from the school to their homes, that is, the children who resided upon his route and attended the said school, and Jordan was paid by the school board for this service. On the date above named Jordan was engaged in fulfilling his contract by transporting said school children to and from the school, among them being Sue Wiggins, age fourteen years, the daughter of the plaintiff. At about 3 :30 p. m. on the above date the defendant Jordan, while transporting the said school children, reached the home of the plaintiff on the Cleveland highway and stopped the school bus for the purpose of allowing the plaintiff's daughter, Sue Wiggins, to disembark. The Cleveland highway runs north and south from Dalton to Cleveland, Tennessee, and is a muchly traveled public highway. The home of the plaintiff and of her daughter, Sue Wiggins, is located on the west side of the highway, and the highway at this point is paved, and the paved part is about eighteen feet wide with shoulders on each side of the width of about three feet, making the total width of said highway at this point about twenty-four feet. The highway is straight and a person has an unobstructed view of it to the north for about one-half mile, and to the south for a like distance from a point in front of the home of the. plaintiff. November 18, 1940, was a bright, sunshiny day, and the highway was dry. The defendant Jordan

536

was proceeding north along said highway when he reached a point directly opposite the plaintiff's home, where he brought the school bus to a stop for the purpose of allowing Sue Wiggins to disembark. As she was preparing to leave the bus by way of the door of the bus, which is located at the front and on the right side of the bus, and which door is opened and closed by a lever operated solely by the defendant Jordan, and before she had alighted from the school bus, Jordan observed the automobile being driven by the defendant Roth approaching from the north at a rapid and dangerous rate of speed of more than sixty miles per hour, and at a time when Jordan would know that the automobile would reach the bus at about the time the said Sue Wiggins would emerge from behind the school bus and start across the highway to her home. The automobile was not more than 150 yards away when she was preparing to alight and was in plain view of the defendant Jordan. Jordan knew that she would alight from the bus on the right side and proceed south alongside the bus to the rear end of the same and proceed west across the highway to her home. The school bus remained standing until she reached the rear end of the same, and just as she started across the highway, as aforesaid, the defendant Jordan started moving the bus, and had moved north about four or five feet when she was struck and killed by the automobile being driven by the defendant Roth. She had reached a point about half way from the center line of the pavement to the west of the pavement when she was struck by the automobile, hurled through the air for a distance of about one hundred and eight feet south and to the west side of the highway into a corn field, and instantly killed. When she emerged from behind the school bus it was standing still and other automobiles were approaching from the south and traveling at a rate of speed in excess of fifty-five miles per hour, and she was engrossed in watching and keeping a safe distance from them. These automobiles were within one hundred feet from her when she started around the rear end of the school bus and they were traveling along the east side of the highway. The defendant Jordan was guilty of negligence in that under the facts hereinbefore alleged he should not have opened the door to the bus and permitted the plaintiff's daughter to alight when he knew that she was not aware of the approach of the automobile driven by

the defendant Roth, and when he knew that for her to reach her home it would be necessary for her to cross the highway, and when he further knew, or by the exercise of ordinary care should have known, that other automobiles would be approaching from the south and which might distract the attention of the said daughter to such an extent that she might not see the Roth car in time to avoid being struck by it. The defendant Jordan was negligent in failing to warn the plaintiff's daughter, as she was preparing to alight from the school bus, of the danger of being struck by the automobile of Roth when the defendant knew that she was unaware of the approach of the automobile and of all the conditions hereinbefore alleged. The petition alleges acts of negligence against Roth, and avers that the specified acts on the part of Jordan and Roth concurred and proximately caused the death of the plaintiff's daughter, and alleges that the child was fourteen years of age and unmarried and capable of rendering and did render valuable services to the plaintiff in washing dishes, sweeping floors, helping cook and doing many other chores about the house, all of the value of $5 per week, and that the plaintiff was dependent on her deceased daughter, and the plaintiff prayed "that process may issue and that a second original be served upon the defendant L. E. Roth by the sheriff of Moscogee County, Georgia, with process and that she have judgment" for $25,000.

The defendant Jordan filed what he termed a plea to the jurisdiction on the ground that the petition contained no prayer for process against him. This plea was treated as a demurrer by the court and was overruled. The defendant Jordan also filed a demurrer on general and special grounds. One ground of special demurrer was that an allegation of the petition that it was the duty of the defendant Jordan to transport school children to their respective homes from school was a mere conclusion of the pleader. Thereafter the petition was amended by attaching a copy of the contract between Jordan and the school authorities, and it was recited that the petition was amended to conform to the contract. Under the contract Jordan agreed, among other things, to "transport the children over bus routes" to and from school daily. Renewed demurrers, general and special, were overruled by the court. The defendant filed an answer denying liability, and by amendment set up that on January 14, 1941, the plaintiff re-

ceived from Lloyds of London the sum of $6250 which was paid on behalf of L. E. Roth, Ann M. Roth, Blue Ribbon Shows Inc., under an insurance policy, insuring L. E. Roth, in full and complete settlement of the liability of said persons to the plaintiff on account of the death of the plaintiff's daughter, and that as a result of said payment the plaintiff released the said L. E. Roth from all further liability to the plaintiff. To the amendment was attached a copy of the writing signed by the plaintiff at the time she received the $6250. It was further alleged in the amendment that after executing said instrument the plaintiff dismissed her suit then pending against Roth, and that by operation of law, as provided in Code §§ 20-909, 20-910 and other law applicable thereto, the receipt of the $6250 and the execution of the paper in question amounted to a release of the said Roth and others named in said writing and said release operated to discharge the defendant Jordan from further liability to the plaintiff. It was further alleged that, if the receipt of said money and the execution of the said instrument of writing should be held not to be a full and complete release of the defendant Jordan by operation of law, the said sum is for the full amount of damage suffered by the plaintiff, and for said additional reason the plaintiff is not entitled to recover from the defendant Jordan. The copy of the agreement shows, after reciting the consideration of the $6250 and the agreement of the plaintiff not to make any further claim and to hold L. E. Roth, Ann M. Roth, Blue Ribbon Shows or Blue Ribbon Shows Inc. or their personal representatives, heirs, successors, or assigns harmless against any and all claims or liabilities by reason of the said death, that "This agreement, however, is not entered into or intended by us as a release of any claim or action that we might have against any other person or persons, and particularly against Lee Jordan, by reason of the matters set forth, and it is expressly agreed and understood that this agreement is not in any wise to enure to the benefit of the said Lee Jordan," and that "It is thoroughly understood that this instrument is a covenant not to sue in the future the said L. E. Roth, Ann M. Roth, Blue Ribbon Shows, and Blue Ribbon Shows Inc., or their personal representatives, heirs, successors, or assigns and is not a release of our rights against Lee Jordan." The plaintiff demurred to the amendment on the ground that, for stated reasons, it did not set up any de-

fense. The court sustained the demurrer and struck the amendment. Error is assigned on the judgment of the court in overruling the general and special demurrers of the defendant Jordan and the plea to the jurisdiction and in sustaining the plaintiff's demurrer to the amendment to the defendant's answer and in striking the same.

■ The present case is controlled on its facts by *Greeson* v. *Davis,* 62 *Ga. App.* 667 (9 S. E. 2d, 690), which dealt with an action to recover damages against the operator of a school bus because of the alleged negligent homicide of the plaintiff's minor daughter, who was fourteen years of age, under circumstances very similar to those alleged in the present petition. In that case it was ruled: "A carrier of passengers, as Greeson was shown to be, must exercise extraordinary diligence to protect the lives and persons of his passengers, but he is not liable to them for injuries after having used such diligence. Code, § 18-204; *Sheffield* v. *Lovering,* 51 *Ga. App.* 353 (180 S. E. 141). In the exercise of this diligence he is under a duty to deposit his passenger at a reasonably safe place for alighting and crossing the street, but he is under no obligation to wait until approaching automobiles have stopped, or to warn the passenger of the usual dangers of traffic which in the exercise of ordinary care would be avoidable. *Locke* v. *Ford,* 54 *Ga. App.* 322 (187 S. E. 715). In the case of a child of tender years this diligence must be exercised with a consideration of the limited abilities of the child; and whether, with respect to the child, a safe place has been selected is usually a question for the jury. But as to the child here involved we have no hesitation in holding as a matter of law that in the present instance a safe place was selected for depositing her. By analogy to the provisions of the penal law in regard to capacity to commit crime, there is a presumption that a young person of the age of fourteen is capable of realizing danger, and of exercising the necessary forethought and caution to avoid it, and is chargeable with diligence for his or her own safety, where the peril of automobiles on a highway is plainly manifest." (Citing.) Just as in the *Greeson* case, the young person here involved, who was fourteen years of age, is not shown by the petition to have been laboring under any disability whatever, but was a normal child of fourteen, and was capable of rendering, and did render, material services

for her mother about the household, including helping in cooking and doing many other chores. Manifestly she was fully capable of appreciating that she should not attempt to cross the highway until she would be able to avoid the passing automobiles which her residence along the highway would naturally cause her to anticipate. She was not deposited upon the highway, but, as was the child in the *Greeson* case, was permitted to emerge from a door which opened on the side of the bus farthest from the highway, and in order to proceed towards the highway had to change her direction and leave a place which was obviously safe for one of her years. The duty of the bus driver was discharged when she reached the place of safety he had arranged for her by causing her to alight on the shoulder of the road, and no duty rested upon him to warn her of the danger of approaching automobiles which in the exercise of ordinary care she could have avoided. It is clear from the petition that she did not exercise the care which she was capable of exercising at fourteen years of age, and that her death was due to her negligence after she was deposited in a safe place by the bus driver. *Gazaway* v. *Nicholson*, 61 *Ga. App.* 3 (5 S. E. 2d, 391), cited and relied on by the defendant in error is distinguishable on its facts. There the bus driver permitted a seven-year-old boy to alight from the bus through a door which was facing and close to the highway; and several cases in foreign jurisdictions cited by the defendant in error deal with children whose ages ran from three and a half years to eight years of age. Other cases involve the discharge of passengers on the highways themselves or in obviously dangerous places. The petition in the present case did not set forth a cause of action, and the court erred in overruling the defendant's general demurrer.

■ Because of the above rulings it is deemed unnecessary to pass on the other assignments of error.

. *Judgment reversed.* *Felton, J., concurs.* *Stephens, P. J., concurs in the judgment.*