LORRAINE PRATT, by Her Father and Natural Guardian, Herbert PRATT, et al., Appellants, v. MELFORD D. ROBINSON et al., Respondents.

Fourth Department, October 31, 1974.

*Leo S. Meyer (Jay M. Friedman of counsel), for appellants.*

*John D. Doyle, Corporation Counsel (James T. Townsend of counsel), for City of Rochester, respondent.*

*Robert J. Hirsch, P. C., for City Lines Management Corp., respondent.*

SIMONS, J. This unfortunate accident occurred when the infant plaintiff was struck by an automobile while on her way

home from school. When she was struck, she was crossing a busy Rochester street three blocks away from the stop at which respondents' school bus had discharged her. In a well-reasoned opinion by the Trial Justice, BOOMER, J., the complaint was dismissed (71 Misc 2d 509). We affirm and write only to comment upon the decision in *Gleich* v. *Volpe* (32 N Y 2d 517), decided subsequent to the trial court's decision, and which it is contended offers grounds for reversal.

It has been the general rule that courts may not substitute their judgment for that of lawfully authorized municipal bodies exercising governmental planning functions (*Weiss* v. *Fote,* 7 N Y 2d 579). The determination of school bus routes and stops is clearly a governmental planning decision. In the *Gleich* case the court stated that liability might be fixed upon a school board for the negligent location of a bus stop. However, it held that even under the facts of that case in which an obviously hazardous bus stop was located on a hill and hidden behind a sharp curve, the school district was not negligent in view of the unsatisfactory alternative locations available.

This case is markedly different. The bus stop in this case was not unsafe per se and there is no claim otherwise. Therefore, liability may not be imposed upon the respondents because another safe location existed for the pick-up and discharge of this infant plaintiff which was more convenient to her home. This is precisely the type of governmental decision held immune from attack in a negligence suit by the holding of *Weiss* v. *Fote* (*supra,* pp. 585–587). The respondents performed a governmental function in selecting a bus stop that was safe and the courts may not substitute their judgment as to which of several safe locations should have been chosen. The judgment should be affirmed.

MOULE, J. (dissenting). The question presented on this appeal is whether a school district is responsible in negligence to a seven-year-old child who was struck by a vehicle while crossing a busy urban thoroughfare three blocks from where she was discharged from a school bus on the theory that the bus stop should have been placed at a safer location with respect to the child's home.

This action arose out of an accident which occurred on April 10, 1970 when the infant plaintiff was hit by a truck while crossing Plymouth Avenue, a six-lane artery in the City of Rochester. She was on her way home from school with seven other children, two of whom were her older brothers. As a result of the accident, she suffered serious injuries. She was

hospitalized for six weeks in a half-body cast, lost a hip joint, and now walks with a limp. The driver of the truck was released from liability upon payment of $10,000, which was the limit of his insurance coverage, and the action was continued against the school district, the City of Rochester and City Lines Management Corporation, the owners of the school bus.

The case was tried before a jury. At the conclusion of the infant plaintiff's proof, her cause of action against the city and the bus company was dismissed. After all the proof was presented, her action against the school district was also dismissed.

The evidence at the trial showed that infant plaintiff was one of eight children scheduled by the school district to be picked up and discharged from the school bus at the corner of Columbia Avenue and Seward Street in Rochester. She and the others were participants in an open enrollment program whereby students attending certain schools were permitted to transfer to other schools in the district more distant from their homes. All eight of the children lived on the far side of Plymouth Avenue, three blocks east of the bus stop at Seward Street. To get from the bus stop to their homes upon returning from school, it was necessary for them to walk east on Columbia Avenue, cross two minor streets, and then cross Plymouth Avenue.

The bus, after discharging the children at Columbia and Seward, also proceeded east on Columbia to Plymouth. It then turned left onto Plymouth and proceeded in a northeasterly direction along Plymouth to its next stop. In so doing, it traveled directly past the homes of the eight children.

The infant plaintiff contends that the school district, knowing all eight of the children scheduled for the Seward-Columbia stop lived east of Plymouth Avenue and that they had to cross it to return home after leaving the school bus, was negligent in not locating the bus stop on the east side of Plymouth. There was evidence that the intersection of Plymouth and Columbia was uncontrolled, that several safe places to stop existed along the east side of Plymouth, and that infant plaintiff's parents requested that the location of the stop be changed but received no response from the school district.

In dismissing the infant plaintiff's cause of action against the school district, the trial court stated that the bus stop, being the place at which the district relinquished control over the children, was the point at which its responsibility for their safety ended. It took the position that extending the school

district's liability past the immediate vicinity of the bus stop was a matter for the Legislature to determine, rather than the courts, and viewed the location of the stop as a planning function of government with which courts should not interfere under the doctrine of *Weiss* v. *Fote* (7 N Y 2d 579).

The facts of the case now before us present a situation never specifically considered by the courts of our State. Previous New York cases wherein children have been struck by vehicles after alighting from a school bus have involved accidents occurring in the immediate vicinity of the bus stop (*McDonald* v. *Central School Dist. No. 3*, 264 App. Div. 943, affd. 289 N. Y. 800) or have been predicated upon an act of omission on the part of the bus driver (*Van Gaasbeck* v. *Webatuck Cent. School Dist.*, 21 N Y 2d 239). In only one case (*Gleich* v. *Volpe*, 32 N Y 2d 517) has an action ever been founded upon the negligent location of a bus stop, but there the allegation was that the stop itself was in an unsafe location at a spot on the road where there was limited visibility for oncoming traffic and not, as here, that the bus stop, although safely located for the children's immediate departure, was unsafe with respect to where they lived.

It is notable to point out, however, that in the *Gleich* case, the Court of Appeals was receptive to a suit against a school district for improperly locating a bus stop and held that *Weiss* v. *Fote* (*supra*) was inapplicable to such a situation. It is also noteworthy that in *Van Gaasbeck* v. *Webatuck Cent. School Dist.* (*supra*) there was no hesitation to extend a district's liability past the immediate vicinity of the bus stop, given a sufficient showing of negligence on the district's part.

The question of whether a school district, in locating a bus stop for children to use, must take into consideration not only the safety of the stop itself, but also its safety in relation to the children's destination, has been considered by courts in other jurisdictions. It has generally been held that the degree of care to be exercised must be proportioned to the degree of danger inherent in the children's youth and inexperience (*Shannon* v. *Central-Gaither Union School Dist.*, 133 Cal. App. 124; *Roden* v. *Connecticut Co.*, 113 Conn. 408; *Gazaway* v. *Nicholson*, 61 Ga. App. 3, affd. 190 Ga. 345; *Greeson* v. *Davis*, 62 Ga. App. 667; *Jordan* v. *Wiggins*, 66 Ga. App. 534; *Taylor* v. *Patterson's Administrator*, 272 Ky. 415).

In *Gazaway* v. *Nicholson* (*supra*, p. 10) a Georgia court stated that the passenger in question was a boy of about seven years of age " and even if it could be said that the place where he

was deposited was safe for an adult, it does not necessarily follow that it was safe for a young child.'' The court went on to say that where a child is involved, the safety of a bus stop is not measured solely by whether no harm would come to him if he remained there but whether, given his competence and ability, he could emerge from such a place without subjecting himself to the hazards of the environs.

Likewise, in *Taylor v. Patterson's Administrator* (*supra*) a Kentucky court held that in selecting the spot to discharge a young boy from school transportation, the location of the child's destination, his age, and known traffic hazards were proper subjects of consideration.

We think that these cases are well-reasoned and may present a fair standard upon which the conduct of a school district can be measured in determining the location at which children are to be picked up and discharged by school buses. A school district which undertakes to transport children must exercise reasonable care in so doing (*Williams v. Board of Trustees of Dist. No. 1, Town of Eaton*, 204 App. Div. 566). However, we, nevertheless, might have difficulty in holding that the school district could be found negligent in failing to relocate its bus stop were it not for the unique nature of the circumstances now before us, where all eight children scheduled for the Seward-Columbia stop lived on the opposite side of a busy thoroughfare from where the stop was located, and where the bus could have stopped at a safe spot near the children's homes without deviating from its prescribed route. Especially in urban areas, a school district must have substantial leeway in selecting bus stop locations that meet both the safety and convenience needs of students whose homes may be in a variety of conflicting locations with respect to one another. In this situation, however, such considerations were unnecessary since all of the students lived in the same general area and the same potential hazard existed not just for one but for all.

It should also be pointed out that any determination as to the school district's duty, under these circumstances, to locate its bus stop in a place of safety with respect to the children's homes, does not necessarily involve an extension of its liability for their welfare past the point at which control over their bodies is relinquished. The issue is not so much what happened after control was surrendered as it is whether such control should properly have been retained for a longer period of time. We think that a jury might properly find that it should, and we note the cases from other jurisdictions which have so held.

Special cognizance must be taken of the fact that all eight children lived in close proximity with one another, that a known hazard existed between the location of the bus stop and their homes, and that a safe place to locate the stop existed on the east side of Plymouth Avenue.

MARSH, P. J., and DEL VECCHIO, J., concur with SIMONS, J.; MOULE, J., dissents in an opinion and votes to reverse and grant a new trial, in which MAHONEY, J., concurs.

Judgment and order affirmed without costs.