69091. BIGGS et al. v. BRANNON SQUARE ASSOCIATES.
(329 SE2d 239)

CARLEY, Judge.

Appellee-defendant is the owner of property on which a shopping center is located. There is also a shopping center on the property which adjoins appellee's. This adjacent property is owned by Roswell Associates, which is a defendant below but not a party to the instant appeal. Appellee's property has a higher elevation than that which belongs to Roswell Associates, with the line between the two properties running along the length of a 54-foot embankment. Appellee owns the upper 37 feet of the embankment and Roswell Associates owns the lower 17 feet. At the top and bottom of the embankment are paved parking areas. The embankment has been unimproved by either appellee or Roswell Associates.

On June 28, 1981, appellant-plaintiff Patrick Biggs was approximately fourteen and one-half years old. On that day, he and a friend rode bicycles to the area where the two shopping centers are located. According to appellant, he and his friend rode their bikes around the parking lot on Roswell Associates' property. Then appellant pushed his bike *up* the embankment, along a pathway that had developed by

pedestrian use of the embankment as a shortcut between the two shopping centers. Appellant had never before ridden his bike *down* the embankment. On this day, he did. Three upright concrete culverts had been placed on the pathway at the bottom of the embankment on Roswell Associates' property. These culverts did not present an absolute impediment to a bicyclist riding down the embankment, however, and appellant merely steered around them. Since the bottom of the embankment coincided with the edge of the parking lot on Roswell Associates' property, appellant rode his bicycle off of the end of the path into the parking lot itself. In the parking lot, appellant crashed into the side of a moving vehicle. As the result of this collision, appellant sustained extensive physical injuries.

Appellant and his parents instituted the instant action against three defendants: appellee; Roswell Associates; and the driver of the vehicle. Insofar as they are relevant here, the allegations of the complaint were as follows: that the pathway down which appellant had ridden had, for a long period, been used as a bike trail, that this use of the pathway by bicyclists was known to the two adjoining property owners; that the placement of the three large culverts as an ostensible barrier at the bottom of the embankment evidenced a recognition of the danger associated with this use of the pathway; that the culverts actually rendered the pathway more attractive to young bicyclists by forming a type of obstacle course for them to challenge; and that the danger to users of the path as a bike trail was or should have been anticipated.

Appellee's answer denied the material allegations of the complaint, including the existence of a pathway on the embankment, as well as its knowledge that the path was being used for bike riding. After discovery, appellee moved for summary judgment, asserting that it owed appellant no duty the breach of which had caused his injury. In opposition to appellee's motion, appellant filed numerous affidavits of individuals who had observed, over some period, that a pathway existed on the embankment and that it was used by bicycle riders. A hearing was conducted and appellee's motion for summary judgment was granted. Appellants, Patrick Biggs and his parents, appeal.

1. Appellants put great reliance upon *Gregory v. Johnson,* 249 Ga. 151 (289 SE2d 232) (1982) and the theory of attractive nuisance enunciated therein. We note at the outset that the law has long recognized a distinction between the "theory of attractive nuisance" and the term "attractive nuisance." See *Nesmith v. Starr,* 115 Ga. App. 472, 476 (155 SE2d 24) (1967). "The theory of attractive nuisance arose to protect *trespassing children* in circumstances where their presence could be reasonably anticipated and measures to protect them could be undertaken without placing a heavy burden upon the

owner's unrestricted use of his land." (Emphasis supplied.) *Gregory v. Johnson*, supra at 153.

Appellants' reliance upon the theory of attractive nuisance is misplaced. The distinction recognized in *Nesmith v. Starr*, supra, is still recognized today. The theory of attractive nuisance is that "[a] possessor of land is subject to liability for physical harm to *children trespassing* thereon. . . ." (Emphasis supplied.) *Gregory v. Johnson*, supra at 154. The evidence, construed most strongly against appellee, demonstrates that, in using the pathway, appellant was a licensee rather than a trespasser. "There was sufficient evidence to authorize [a] jury to find that the path had been so long used by the public as a passageway over the land that the owner must have known that it was so used and have impliedly consented to its use." *Etheredge v. Central of Ga. R. Co.*, 122 Ga. 853, 855 (50 SE 1003) (1905). See also *Cook v. Southern R. Co.*, 53 Ga. App. 723, 727 (3b) (187 SE 274) (1936).

Appellants certainly are not disadvantaged by the inapplicability of the attractive nuisance theory as the basis for appellee's liability. That theory merely establishes the *minimum* standard of care that a landowner owes to children regardless of their status as trespassers, licensees or invitees. See *Housing Auth. of Atlanta v. Famble*, 170 Ga. App. 509, 526-527 (317 SE2d 853) (1984); Restatement of the Law Second, Torts, § 343B (1965). However, "in the case of a licensee there is a *slightly higher duty* on the part of the owner of the premises. He must not wantonly or wilfully injure the licensee . . . . [I]t is usually wilful or wanton not to exercise ordinary care to prevent injuring a person who is actually known to be, or may reasonably be expected to be, within the range of a dangerous act being done or a hidden peril on one's premises." (Emphasis supplied.) *Cook v. Southern R. Co.*, supra at 726. And, appellant's age would be as much a factor entering into the determination of the duty owed to him as a licensee as would be the case if he were a trespasser. See *Etheredge v. Central of Ga. R. Co.*, supra at 854-855; *Cook v. Southern R. Co.*, supra at 727 (3a). In other words, "[t]he *same result* [as to a landowner's liability] may be arrived at without invoking the doctrine where the infant is not a trespasser and the duty to exercise due care under the circumstances has not been met." (Emphasis supplied.) *Starland Dairies v. Evans*, 105 Ga. App. 813, 815 (125 SE2d 682) (1962).

On the other hand, under the evidence of record, appellants might be at a disadvantage were the attractive nuisance theory the *sole* basis upon which to assert appellee's liability. As enunciated by the Supreme Court, that theory expressly imposes liability only for physical harm to trespassing children which is "caused by *an artificial condition upon the land* . . . ." (Emphasis supplied.) *Gregory v. Johnson*, supra at 154. The theory clearly does not apply to *natural*

water conditions which exist on private property. See generally *Wren v. Harrison*, 165 Ga. App. 847, 848 (303 SE2d 67) (1983) (distinguishing between natural ponds or water hazards and an unfenced swimming pool in a residential area). The theory likewise may not apply to *any* natural condition on private property. "[A]s to a natural condition or common danger existing in the order of nature, the attractive nuisance doctrine does not apply, and it is the duty of parents to warn their children of such dangers." *McCall v. McCallie*, 48 Ga. App. 99, 100 (171 SE 843) (1933). As against appellee, it does not appear that there is any evidence of an injurious *artificial* condition upon its property, only a natural, unimproved embankment over which runs a naturally worn pathway. A natural declivity wherein the only active force present is that of gravity does not constitute an artificial condition. The allegedly attractive concrete culverts and the parking lot where the collision occurred are all located on Roswell Associates' property, and not on appellee's land. "[D]efendants [are] under no duty to plaintiffs merely because they might be owners or occupiers of land adjacent to premises wherein lay the apparent cause of the . . . mishap." *Housing Auth. v. Famble*, supra at 522. Thus, had there been no evidence that use of the pathway constituted the exercise of a license and had appellant been without question no more than a mere trespasser taking a shortcut over clearly private property, a recovery under the theory of attractive nuisance, even after *Gregory v. Johnson*, supra, would be open to question. *McCall v. McCallie*, supra.

However, we need not address the merits of the instant claim as if appellant Patrick Biggs were a mere trespasser. Insofar as appellants relied upon the *theory* of attractive nuisance and the evidence of record demonstrates that appellant Patrick Biggs was a licensee, there was no reversible error in the grant of summary judgment to appellee. That theory generally "has no place in a case where the circumstances show a duty on the part of a defendant to exercise ordinary care without resort to the doctrine of attractive nuisances." *Nesmith v. Starr*, supra at 476.

2. Since the construction of the evidence most strongly against appellee demonstrates that appellant Patrick Biggs *was* a licensee rather than a mere trespasser, we must determine whether the evidence authorized the grant of summary judgment against appellants under the generally applicable principles for determining a landowner's liability for physical harm caused to a licensee by a condition on the land. Those principles are set forth in *Patterson v. Thomas*, 118 Ga. App. 326, 328 (163 SE2d 331) (1968). See also *London Iron & Metal Co., Inc. v. Abney*, 245 Ga. 759, 761 (267 SE2d 214) (1980). Unlike liability to a mere trespasser, it is clear that a landowner may be liable to a *licensee* for certain dangers created by natural as well as

artificial conditions on his property. See Restatement of the Law Second, Torts, § 342, comment e (1965). And, as noted previously, the age of the licensee is also a factor which may enter into the determination of the landowner's duty. See *Etheredge v. Central of Ga. R. Co.*, supra; *Cook v. Southern R. Co.*, supra; *Leach v. Inman*, 63 Ga. App. 790 (3) (12 SE2d 103) (1940); *Clinton v. Gunn-Willis Lumber Co.*, 77 Ga. App. 643, 649 (49 SE2d 143) (1948). With specific regard to the issue of age, the following legal principles must be considered in determining the duty owed to appellant by any landowner: "A young person of the age of this plaintiff is presumed to be capable of realizing danger and of exercising the necessary forethought and caution to avoid it, and is presumptively chargeable with diligence for his own safety, where the peril is palpable and manifest . . . ." *Central R. Co. v. Phillips*, 91 Ga. 526, 528 (17 SE 952) (1893). " 'A boy of fourteen years of age is presumptively chargeable with the same standard of diligence for his own safety as an adult.' [Cit.]" *Redding v. Morris*, 105 Ga. App. 152, 154 (123 SE2d 714) (1961) (On Motion for Rehearing). The evidence of record demonstrates that this presumption does apply to appellant.

The alleged dangerous condition in the instant case is the existence on appellee's property of one end of a natural footpath, which leads down an embankment where lateral visibility is obscured, into the adjoining property, up to the culverts and then ending at the edge of Roswell Associates' parking lot. The evidence of record demonstrates that none of these characteristics of the pathway was latent or was concealed from appellant. As noted above, appellant testified that he first rode around the lower parking lot and then pushed his bike up the path to the top of the embankment on appellee's property. Appellant agreed that "[w]hen [he] came down the hill, [he knew he was] going *back out* into the parking lot on the street . . . ." (Emphasis supplied.) Appellant also knew that there were trees along the side of the path. Although he apparently did not know from standing at the top that, on his way down, the trees would block his view of the parking lot to the left, he did know that "there was more parking lot down to [his] left . . . ." He also "knew that cars were around the parking lot down to [his] left." The only thing that appellant did not know about the actual outcome of his impending ride was that the cars in the parking lot "would be coming right by the end of the trail." However, the possibility of encountering vehicular traffic anywhere in an area specifically designed and designated for automobiles and the threat created to bicyclists by moving vehicles are risks which one of appellant's age is "[m]anifestly . . . fully capable of appreciating . . . ." *Jordan v. Wiggins*, 66 Ga. App. 534, 540 (18 SE2d 512) (1942). Compare *Patterson v. Thomas*, supra.

Moreover, as appellant was coming down the embankment, he ac-

knowledged that he was able to see the parking lot "to the front of [him]." However, knowing that he was headed directly into the parking lot and that his peripheral vision was obscured, appellant never applied the brakes and did not ever "try to stop the bike before [he] got to the parking lot area . . . ." Therefore, even if appellant did not initially realize at the top of the path that he was about to launch himself on a blind ride into the lower parking lot, even after he did realize it, he made *no* effort whatsoever to act on that realization. Instead, he voluntarily continued downward. "[O]ne who knowingly and voluntarily takes a risk of physical injuries cannot recover for injuries caused by one's own calculated and rational act. [Cits.]" *Doctor's Hosp. of Augusta v. Poole*, 144 Ga. App. 184, 185 (2) (241 SE2d 2) (1977).

The evidence, even when construed most strongly against appellee, would not authorize a finding that a bicyclist of appellant's age, who stood at the top of the path after having walked up it, would fail to realize and appreciate the full extent of the risk of coasting back down into the adjoining parking lot at an unrestrained speed. Under the evidence, the end of the path on appellee's property was not, as to appellant, the entrance way into a mantrap with an undetectable and unavoidable danger awaiting at the other end on the adjoining property. The record demonstrates that appellant's decision to coast back down the pathway was not unlike the decision of the plaintiff in *Pries v. Atlanta Enterprises*, 66 Ga. App. 464 (17 SE2d 902) (1941) to step through a door-way which he knew opened into darkness. "A warning by [appellee] would not have apprised him of anything he did not know, and not laboring under any disability, he could reasonably appreciate the danger of proceeding . . . . The [appellee] was not under any duty, with respect to such licensee, to keep the premises up to any particular standard of safety. Under the law he took the premises as he found them. No dangerous act was being done by the [appellee]. The [appellee] did not knowingly let him run into a 'hidden peril' or wilfully or wantonly cause his injury. The evidence does not show any liability against the [appellee] under the law, but shows that the [appellant's] injury was proximately caused by his failure to use ordinary care for his own safety. Accordingly, the trial court did not err in granting [summary judgment to appellee]." *Pries v. Atlanta Enterprises*, supra at 469.

*Judgment affirmed. Birdsong, P. J., and Beasley, J., concur.*

DECIDED MARCH 8, 1985 —
REHEARING DENIED MARCH 20, 1985 — ▮

*Michael E. Sullivan, Charles W. Field*, for appellants.

*George E. Duncan, Jr., Robert P. Bleiberg*, for appellee.