A97A2067. GOODMAN et al. v. CITY OF SMYRNA.
(497 SE2d 372)

ANDREWS, Chief Judge.

Dennis Goodman sued the City of Smyrna claiming the City wrongfully caused the death of his 11-year-old child, Deanette Goodman.[1] This tragic death resulted from injuries the child sustained when she roller-skated down the incline of a City street, lost control, and skated off the street into the drop-off of an adjacent rocky creek bed. Goodman alleged that the street and the creek were negligently constructed and maintained by the City or constituted a nuisance.

---

[1] Goodman alleged that he brought the action on his own behalf and on behalf of the child's mother pursuant to OCGA § 19-7-1.

The trial court granted the City's motion for summary judgment concluding that the child was aware of the creek bed, appreciated the danger of being injured by falling into it, and assumed the risk by skating down the slope of the street at a high rate of speed in the vicinity of the drop-off.

The record shows that the street at issue sloped down a hill to a sharp curve and that at the curve, a creek ran adjacent to the street with about a six-foot drop-off from the street level to the bottom of the creek bed. Although a small amount of vegetation was growing in an area a few feet wide between the edge of the street and the drop-off, a photograph of the area taken the day after Deanette fell shows that the vegetation did not obscure the drop-off. The City police detective who investigated the incident the day after it happened and took the photograph stated by affidavit that the drop-off was visible coming down the hill from a distance of at least 40 feet. There was no evidence that anyone had previously fallen into the creek or that the City had ever received any report that the street or the creek posed a hazard to pedestrians.

Goodman deposed that he allowed his daughter to skate on the street because it was located in the quiet neighborhood in which they resided. He testified that Deanette was an accomplished skater who frequently skated down the sloped street, that she was intelligent and mature for her age, and that she was aware of the danger of being injured by falling from a height. A friend with whom Deanette played and skated in the neighborhood stated by affidavit that prior to the incident at issue, she and Deanette had on two occasions looked at the creek and the drop-off in the area where Deanette later fell. She stated that she and Deanette talked about the fact that there was a drop-off down to the creek, that they could be hurt by falling into the creek from the street, and that they should be careful in that area. She stated that on the day Deanette fell into the creek, they were skating together down the incline of the street being chased by Deanette's brothers. She said that Deanette was ahead of her skating "very fast" down the street and that as Deanette approached the area of the street where the creek ran adjacent, Deanette looked back at her and yelled, "hurry up." She stated that before Deanette could turn back around, she skated off the street and into the creek.

Although assumption of the risk is ordinarily a jury question, in plain, palpable and indisputable cases, it may be decided as a matter of law. *Young v. Brandt*, 225 Ga. App. 889, 891 (485 SE2d 519) (1997). In order to establish the defense of assumption of the risk, the City was required to show that Deanette Goodman "(1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed [herself] to those

risks." (Footnote omitted.) *Vaughn v. Pleasent*, 266 Ga. 862, 864 (1) (471 SE2d 866) (1996). As to a child between the ages of seven and fourteen, "there is no presumption that the child did or did not exercise due care or does or does not have sufficient capacity to recognize danger or to observe due care." (Citations and punctuation omitted.) *Jackson v. Young*, 125 Ga. App. 342, 343-344 (187 SE2d 564) (1972). For children between these ages, these issues hinge on the circumstances of the case and the capacity of the particular child. Id. at 344. Nevertheless, there is no bar to applying assumption of the risk, as a matter of law, to the conduct of a child between these ages when the evidence shows that the danger was obvious, that the child knew of the danger and was able to appreciate the risks associated with it, and the child voluntarily chose to run the risk. *Abee v. Stone Mountain Mem. Assn.*, 252 Ga. 465, 466 (314 SE2d 444) (1984), affirming 169 Ga. App. 167 (312 SE2d 142) (1983).

Generally, the dangers of fire, water and falling from heights are considered to be understood even by a young child absent factors creating additional risks which could not be appreciated by the child. *Riley v. Brasunas*, 210 Ga. App. 865, 867 (438 SE2d 113) (1993). "No danger is more commonly realized or risk appreciated, even by children, than that of falling; consciousness of the force of gravity [is almost instinctual]. Certainly a normal child [of 11] years of age . . . knows that if it steps or slips from . . . [an] elevated structure, it will fall to the ground and be hurt." (Citations and punctuation omitted.) *Laite v. Baxter*, 126 Ga. App. 743, 746-748 (191 SE2d 531) (1972); *Riley*, supra at 867. Accordingly, Goodman's 11-year-old daughter is considered to have assumed the risk of patent, obvious and known dangers which she was able to appreciate and avoid. *Abee*, supra, 169 Ga. App. 167, 169.

We need not address Goodman's allegations that the City was negligent or maintained a nuisance, nor need we decide whether the child occupied the status of a licensee or trespasser at the time of the incident. Even assuming, without deciding, that the City breached a duty of care owed to the child, we conclude that the trial court correctly granted summary judgment to the City on the basis of assumption of the risk. In this case, the danger and associated risks of rollerskating down the slope of the street at a high rate of speed toward a sharp curve in the street bordered by a visible six-foot-deep drop-off were obvious. See *Biggs v. Brannon Square Assoc.*, 174 Ga. App. 13, 16-18 (329 SE2d 239) (1985). The record shows that Deanette was an intelligent 11-year-old who was an experienced skater, knew the drop-off was there, and appreciated the danger of falling into it from the street. Here, the obvious risks in skating at a high rate of speed down the sloped street toward the adjacent drop-off to the creek were losing control, skating off the street into the creek, and being injured

in the fall. "[T]he obviousness of the very danger which led to [Deanette's tragic death] makes this one of those cases in which a minor below the age of fourteen may be deemed to have assumed the risk as a matter of law." *Abee*, supra, 252 Ga. at 465-466; *Barnes v. Fulton*, 213 Ga. App. 806, 807-808 (446 SE2d 213) (1994).

Goodman claims the child's momentary inattentiveness before she fell precludes application of assumption of the risk. Although it appears that Deanette may have momentarily disregarded the danger when she looked back to call to her friend, this does not change the fact that she assumed the risk of a danger she knew and appreciated. "It may be that some children, while realizing the danger, will disregard it out of a spirit of bravado, or because . . . of their 'immature recklessness' but the possessor of land is not to be visited with responsibility for accidents due to this trait of children of the more venturesome type." (Citation and punctuation omitted.) *Augusta Amusements v. Powell*, 93 Ga. App. 752, 757 (92 SE2d 720) (1956).

Goodman also claims that his daughter could not have appreciated the risks associated with the combination of a sloping street, a "roll curbing" at the edge of the street, the City's placement of "riprap" rocks in the creek to control erosion, and the lack of guardrails and warning signs. Contrary to Goodman's assertion, the slope of the street was obvious, and we find that Deanette, who frequently skated down the street, was fully capable of appreciating that she would pick up speed skating down the slope. Furthermore, the rocks in the creek bed and the lack of any barrier to prevent one from falling into the creek were obvious features. The record shows that before she fell, Deanette had seen the creek and the drop-off to the creek bed in the area where she later fell, and she appreciated the fact that she could be injured by falling into the creek in that area. Finally, the fact that Deanette skated over a "roll curb" a few inches high at the edge of the street which may have lifted her slightly before she went over the drop-off into the creek did not create an additional risk factor which the child could not appreciate. The evidence shows that the "roll curb" did not increase or decrease the risk because, under the circumstances, the child would have fallen into the creek whether or not she skated over a roll curb.

*Judgment affirmed. Johnson, J., concurs. Blackburn, J., concurs specially.*

BLACKBURN, Judge, concurring specially.

I concur specially because I believe that the existence of assumption of risk is ordinarily a jury question, and it is especially so when that doctrine is being applied to young children. In *Jackson v. Young*, 125 Ga. App. 342, 343-344 (187 SE2d 564) (1972), cited by the majority, we held, " 'There is no presumption of law that a child between

the ages of seven and fourteen did or did not exercise due care, or does or does not have sufficient capacity to recognize danger or observe due care.' *Brewer v. Gittings,* 102 Ga. App. 367 (4) (116 SE2d 500). As was well said by Judge Bell in this controlling authority (p. 374): 'It seems clear from the Georgia cases that the question of capacity or lack of capacity to be contributorily negligent in the case of children between the ages of seven and fourteen is a subjective one which necessarily depends in each situation upon the particular child's mental and physical capacity. Thus, there is no presumption that the child did or did not exercise due care or does or does not have sufficient capacity to recognize danger or to observe due care. See *Simmons v. Atlanta & West Point R. Co.,* 46 Ga. App. 93 (d) (166 SE 666); *Southern R. v. Chatman,* 124 Ga. 1026, 1037 (53 SE 692, 6 LRA (NS) 283, 4 AC 675). Since the question of capacity is an individual one in each of the cases involving children between seven and fourteen years of age, the jury must first find that the particular child had the capacity required and then must decide whether or not the child exercised it. As it was stated in *Central R. & Bkg. Co. v. Rylee,* 87 Ga. 491, 495 (13 SE 584, 13 LRA 634), "The better rule would be for the jury to deal with each case upon its own facts, unhampered by presumptions of law either for or against the competency of the child." ' "

However, in *Abee v. Stone Mountain Mem. Assn.,* 252 Ga. 465, 466 (314 SE2d 444) (1984), affirming 169 Ga. App. 167 (312 SE2d 142) (1983), our Supreme Court held that, in some cases, the obviousness of the danger causing injury allows a judge to determine that a minor below the age of 14 assumed the risk of injury as a matter of law. I agree with Justice Gregory, who, in his dissent, stated that he felt this issue should be resolved by a jury.

It is true that the obviousness of the danger may support a judgment, as a matter of law, when dealing with an adult, because such adult's capacity to comprehend and appreciate the danger may be presumed. No such presumption may be applied when dealing with a child between the ages of seven and fourteen. With such children, the child's capacity to recognize danger or observe due care is a question of fact that must be determined in each case, regardless of the obviousness of the danger. The obviousness of the danger, no matter how evident, cannot establish the ability of the child to appreciate it. The distinction between a child and an adult is based upon the child's reduced ability to appreciate the danger, not its ability to see it. Each child has a different mental capacity and level of maturity, and exactly what that capacity is in each case should be a question for the jury, not the trial judge.

In applying the law of assumption of risk to the present facts, it is clear that the rocky cliff was an open and obvious danger of which

the child was aware. Whether the child appreciated such obvious danger is a question of fact for a jury to determine. In every case, each child approaching that cliff will have a different capacity to comprehend and appreciate the danger of falling into the abyss. The flaw in our Supreme Court's holding in *Abee* is demonstrated by the fact that it authorizes a majority opinion that would have been no different in substance had the plaintiff been an adult.

While our Supreme Court's opinion on this issue authorizes the majority's holding, I believe that this rule is unsound because it ignores the issue of the child's capacity to comprehend and appreciate the subject danger, with the result that the same standard is applied to such children as to adults.

According to W. Prosser, Law of Torts, 4th ed., p. 440, § 68 (1971), "[i]n its simplest and primary sense, assumption of risk means that the plaintiff, in advance, has given his consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the defendant is to do or leave undone." Therefore, for assumption of risk to apply, it must be shown that the plaintiff knew or should have known of a potential danger and appreciated it to the extent that he may be deemed to have made the decision to voluntarily face it.

DECIDED FEBRUARY 4, 1998 —
RECONSIDERATION DENIED FEBRUARY 18, 1998

*King & Croft, F. Carlton King, Jr., Thomas A. Croft*, for appellants.

*Freeman, Mathis & Gary, Theodore Freeman, Drew, Eckl & Farnham, William T. Mitchell, Shivers & Associates, Wayne C. Wilson, Dan J. Colley*, for appellee.