A97A2120, A97A2121. RUBIO et al. v. DAVIS et al.; and vice versa.
(500 SE2d 367)

McMURRAY, Presiding Judge.

These related appeals arise from an incident during which three-year-old Jacob Rubio, the son of migrant farm workers Joel and Rosa Rubio, was seriously injured by a conveyor belt in Julian Wood and Lamar Davis' packing shed. The Rubios brought this action against defendants Wood and Davis, who were partners in a watermelon farming operation when Jacob was injured.[1]

The evidence adduced at trial, construed to support the Rubios' claims, reveals the following: Defendants Wood and Davis hired Ramiro Ozuna to recruit and supervise a crew of workers to harvest watermelons. Because Wood and Davis instructed Ozuna that children were not allowed in the fields or the packing shed, Ozuna set up a nursery for the laborers' children about 100 yards from defendants' packing shed. A woman was hired to watch the children. She was paid $7 a day for her efforts.

On the morning of June 17, 1994, the Rubios arrived at defendants' farming operation with their three children looking for work. Ozuna hired Mr. Rubio that morning and asked for Mrs. Rubio's help later that afternoon. After agreeing to work, Mrs. Rubio placed her children in the farm's nursery and began laboring in defendants' packing shed, near a large conveyor belt. While the Rubios were working, some of the migrant workers' children entered the packing shed and began crushing cans under the conveyor belt's strong motorized mechanisms. While playing, three-year-old Jacob Rubio got caught in the conveyor belt. His arm was instantly amputated.

The trial court declared a mistrial because the jury was unable to reach a verdict. The Rubios appealed in Case No. A97A2120 after the trial court granted defendants' joint motion for judgment notwithstanding the mistrial. Wood and Davis filed a cross-appeal in Case No. A97A2121. *Held*:

## Case No. A97A2120

1. The Rubios contend the trial court erred in granting defendants' motion for judgment notwithstanding the mistrial, arguing that genuine issues of material fact remain as to their alternative negligence and attractive nuisance claims. These alternative theories of liability are relevant because the evidence regarding Jacob Rubio's status as a trespasser, licensee or invitee is hotly disputed.

" 'A motion for a judgment notwithstanding a mistrial is analo-

---

[1] A third defendant, the owner of the property on which the incident occurred, was dismissed without prejudice.

gous to a motion for a directed verdict or motion for judgment notwithstanding the verdict in that the same can be sustained only where "(t)here is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom shall demand a particular verdict." (OCGA § 9-11-50 (a)).' *Gordon v. Carter*, 126 Ga. App. 343, 344 (1) (190 SE2d 570). See also *Findley v. McDaniel*, 158 Ga. App. 445, 446 (1) (280 SE2d 858)." *Goggin v. Goldman*, 209 Ga. App. 251, 252 (433 SE2d 85).

In the case sub judice, the Rubios contend Jacob must have escaped from the nursery, while defendants contend Mrs. Rubio brought the child into the shed.[2] Frank Gillis, a licensed private investigator, testified that he interviewed defendant Julian Wood and that Wood told him that, on the day of the incident, several children entered the shed to get out of the rain. He also stated that Wood "saw several children take metal cans . . . and put them in this conveyor belt and the conveyor belt was crushing them. . . '. Then he said the Rubio child walked up and put one in the conveyor belt and his arm got caught in the conveyor belt." Wood denies making any such statement, claiming that Gillis' testimony was "fabricated." Defendants presented testimony that Wood was not present in the shed at the time of the accident, that they did not know any children were in the shed, and that it was not raining the day of the incident. These circumstances raise genuine issues of material fact regarding Jacob Rubio's status as a trespasser, licensee or invitee.

The dissent's reliance on *Biggs v. Brannon Square Assoc.*, 174 Ga. App. 13 (329 SE2d 239), for suggesting the exclusion of attractive nuisance liability is misplaced. In *Biggs*, this Court excluded attractive nuisance liability because of conclusive proof that the injured child was a licensee. Id. at 14 (1). As demonstrated above, such undisputed proof does not exist in the case sub judice. Under such circumstances, a jury (under proper instructions) should resolve Jacob Rubio's status as a trespasser, licensee, or invitee, and then consider defendants' liability under the appropriate premises liability standard.[3] Thus, if a jury finds that Jacob Rubio was a licensee, then defendants' liability would be measured by the standards restated in *Biggs v. Brannon Square Assoc.*, 174 Ga. App. 13, 16 (2), supra. If a jury decides Jacob Rubio was an invitee, then defendants' liability would be measured by the ordinary care standard prescribed in

---

[2] Defendants base this contention on testimony that a box was found near the scene of the accident with a blanket and a pillow in it.

[3] This disposition is consistent with the Second Restatement of the Law of Torts' comment that all rules relating to the attractive nuisance doctrine "are equally applicable where the child is a licensee or an invitee." Restatement of the Law Second, Torts, § 343B, p. 223, comment b (1965).

OCGA § 51-3-1. But, if a jury finds that Jacob Rubio was trespassing in defendants' packing shed when his arm was amputated, defendants' liability must be measured according to Georgia's attractive nuisance doctrine, as set out in *Gregory v. Johnson*, 249 Ga. 151 (289 SE2d 232).

The dissent's reliance on *Johnson v. Lanier*, 140 Ga. App. 522, 524 (4) (231 SE2d 428), for suggesting that defendants' watermelon conveyor belt is not an "attractive nuisance" is also misplaced. *Lanier* holds, as a matter of public policy, that a properly functioning farm tractor is not an inherently dangerous instrumentality so as to invoke attractive nuisance liability. Id. The problem with this 1976 decision, however, is that it does not apply the five-part foreseeability test which the Supreme Court of Georgia prescribed in 1982 in *Gregory v. Johnson*, 249 Ga. 151, 154, supra, for determining "attractive nuisance" liability.

" 'A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if (a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and (b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and (d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and (e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.' [Restatement of the Law Second, Torts, § 339 (1965)]." *Gregory v. Johnson*, 249 Ga. 151, 154, supra.

In the case sub judice, there is proof that defendants were aware that their conveyor belt was an attraction for their migrant workers' young children; that this motorized equipment posed serious risks of personal injury or death to these children; that Jacob Rubio, because of his youth, could not appreciate the risks involved in playing with the conveyor belt; that the utility to defendants of maintaining the conveyor belt and the burden of eliminating the danger was slight as compared with the risk to the children involved, and that defendants failed to take any steps to eliminate the danger or otherwise to protect the children. These circumstances raise genuine issues of material fact as to defendants' potential liability under the doctrine of attractive nuisance. *Gregory v. Johnson*, 249 Ga. 151, 154, supra. Consequently, the trial court erred in granting defendants' motion for judgment notwithstanding the mistrial.

2. In a second enumeration of error, the Rubios contend proof of defendants' subsequent safety alterations to their conveyor belt should have been admitted into evidence at trial. We do not agree. The trial court did not abuse its discretion in excluding this proof based on Georgia's strong public policy against the admission of such evidence. See *Royals v. Ga. Peace Officer Standards &c. Council*, 222 Ga. App. 400, 401 (1) (474 SE2d 220).

### Case No. A97A2121

3. Davis and Wood contend the trial court erred in its instructions to the jury. The charge on imputed negligence enumerated as error was taken verbatim from the Council of Superior Court Judges chargebook, was adjusted to the evidence, and was not error. Council of Superior Court Judges, Suggested Pattern Jury Charges, Vol. I: Civil Cases, p. 238 (P) (2). If defendants wished the jury to be charged on the related principles outlined in *Taylor v. McClendon*, 205 Ga. App. 390 (422 SE2d 440), it was their responsibility to submit an appropriate request to charge — which they did not.

The charge on future earnings as an item of damages was not error even in the absence of evidence from which a jury could calculate the amount of any future earnings loss. The general requirement that some evidence showing earnings capability both before and after the injury is not applicable when the injured party is too young to have a work or earnings history. In such cases a different rule applies; the amount of damages awardable for a permanent injury to a young child rests in the sound discretion of the jury, to be exercised in the light of the jury's own common observation and experience, in order to compensate the plaintiff for the injury actually sustained. *Murray v. Sanford*, 226 Ga. App. 591, 592 (487 SE2d 135).

Nor did the trial court err by instructing the jury on both attractive nuisance and negligence. While defendants contend the trial court should have determined whether Jacob Rubio was an invitee, a licensee, or a trespasser and then charged as to the appropriate duty owed to the child, the child's status was a controverted issue for the jury. Thus, the trial court appropriately provided direction to the jury under the Rubios' alternative claims.

*Judgment affirmed in Case No. A97A2121. Judgment reversed in Case No. A97A2120. Ruffin and Eldridge, JJ., concur. Beasley, J., concurs in the judgment only. Andrews, C. J., Birdsong, P. J., and Smith, J., dissent.*

SMITH, Judge, dissenting.

I agree that the trial court erred in granting a judgment notwithstanding a mistrial on the Rubios' negligence claim. But I dissent

because the Rubios cannot simultaneously maintain a claim based upon the theory of attractive nuisance. Construing the evidence in the Rubios' favor, as we are required to by law, they have clearly demonstrated that their child was a licensee or invitee rather than a trespasser. The majority cannot "have it both ways"; the testimony of the Rubios' own witnesses cannot be relied upon to establish a claim of negligence and then rejected in order to sustain a simultaneous and inconsistent claim of attractive nuisance. That doctrine has no application here.

The Rubios' investigator, Gillis, testified that Wood told him that he knew children were in the shed to shelter from the rain and that he watched several children, including the Rubio child, playing with the conveyor belt but did nothing to stop them. Wood denies making any such statement, claiming that Gillis's testimony was "fabricated." Defendants presented testimony that Wood was not present in the shed at the time of the accident, that they did not know any children were in the shed, and that it was not raining the day of the incident. But we must construe the evidence in favor of the Rubios.

Construed in this manner, these facts do not demonstrate a claim for attractive nuisance but rather for negligence to a licensee or invitee. In *Biggs v. Brannon Square Assoc.*, 174 Ga. App. 13 (329 SE2d 239) (1985), this Court rejected an attempt to rely upon the theory of attractive nuisance when the evidence — which was not "conclusive" as the majority contends, but construed, as we must, most strongly in favor of the plaintiff — demonstrated that he was a licensee. We noted the leading case of *Gregory v. Johnson*, 249 Ga. 151 (289 SE2d 232) (1982) and its holding that a possessor of land is subject to liability for physical harm to trespassing children. Relying upon this principle, we observed that the theory of attractive nuisance "merely establishes the minimum standard of care that a landowner owes to children regardless of their status as trespassers, licensees or invitees. . . . In other words, the same result as to a landowner's liability may be arrived at without invoking the doctrine where the infant is not a trespasser and the duty to exercise due care under the circumstances has not been met." (Citations, punctuation and emphasis omitted.) *Biggs*, supra at 15. "[W]e need not address the merits of the instant claim as if appellant . . . were a mere trespasser. Insofar as appellants relied upon the theory of attractive nuisance and the evidence of record demonstrates that appellant . . . was a licensee, there was no reversible error in the grant of summary judgment to appellee. That theory generally has no place in a case where the circumstances show a duty on the part of a defendant to exercise ordinary care without resort to the doctrine of attractive nuisances." (Citations, punctuation and emphasis omitted.) Id. at 16 (1).

This case presents precisely such a situation. Construed in favor

of the Rubios, the evidence shows a duty on the part of Wood and Davis to exercise ordinary care, independent of the theory of attractive nuisance. In *Murray Biscuit Co. v. Hutto*, 119 Ga. App. 377 (167 SE2d 182) (1969), a small child was injured by a conveyor under very similar circumstances. The child's mother was an employee of defendant and brought the child into the defendant's factory despite an "employees only" sign, believing that the defendant allowed children in the factory despite the sign. While the mother was talking to a relative, the child's hand became entangled in a conveyor, and he was seriously injured.

We observed that a verdict for the defendant in *Hutto* was not demanded because the jury could have concluded that plaintiff was a licensee. Id. at 386 (2). Evidence was presented that defendant's supervisor considered the machine dangerous, and that supervisors were present and saw or should have seen the child in close proximity to the machine. Under these circumstances, "it was a jury question (1) as to whether defendant impliedly permitted plaintiff's presence so as to make him a licensee, and, if so, (2) whether defendant would reasonably expect plaintiff to be within the range of machinery which it knew to be dangerous, and, if so, (3) whether defendant then failed to exercise ordinary care to protect plaintiff under the circumstances." Id.

Hence, even if we accept Wood and Davis's contention that Mrs. Rubio brought her child into the packing shed, the facts as construed in favor of the Rubios present an issue of negligence. Testimony that Wood knew the machine was dangerous to children, saw children in the shed, and saw the children, including Jacob Rubio, playing with the conveyor but did not intervene, places this case squarely within the application of the *Hutto* decision.

Moreover, in another case with remarkably similar facts, this Court has held that farm equipment operating in a farm field in an ordinary manner is not an attractive nuisance. In *Johnson v. Lanier*, 140 Ga. App. 522 (231 SE2d 428) (1976), a farmer hired an independent contractor to harvest a field, and the farmer furnished a tractor and trailer to accomplish the work. A number of the contractor's relatives participated in the work, and the four-year-old grandson of the contractor was in the care of a relative in a house across the road from the field. The child somehow eluded his babysitter, entered the field unnoticed, and became entangled in the power take-off valve of the tractor, suffering multiple severe injuries.

In affirming summary judgment in favor of the farmer, this Court rejected the contention that the tractor was an attractive nuisance: "There was no allegation or evidence that the tractor involved was operating in a different fashion from any other tractor with its power take-off valve in operation. A farm tractor with a trailer

attached is commonly found in a corn field when corn is being harvested. It would be extending the doctrine of attractive nuisance too far to hold that a farm tractor in a farm field running in a normal manner and not dangerous in itself, although possibly attractive to children, is inherently dangerous, even though such a tractor might be capable of inflicting injury if improperly or carelessly used. [Cit.]" Id. at 525 (4).

Accordingly, the issue presented for the jury is one of negligence, not attractive nuisance, and defendants were entitled to a partial judgment notwithstanding a mistrial on the claim of attractive nuisance.

For these reasons, I respectfully dissent.

I am authorized to state that Presiding Judge Birdsong joins in this dissent.

DECIDED MARCH 20, 1998.

*Mitchell M. Shook*, for appellants.
*Reinhardt, Whitley & Wilmot, Glenn Whitley, J. Reese Franklin*, for appellees.

